UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WANDER DURAN DE LA ROSA,

                          Petitioner,

      -vs-

WILLIAM P. BARR, U.S. Attorney
General; THOMAS E. FEELEY, Field
Office Director for Detention
and Removal, Buffalo Field Office,
Bureau of Immigration and Customs
Enforcement; and JEFFREY J. SEARLS,
Facility Director, Buffalo Federal
Detention Facility,

                          Respondents.

**No. 6:19-cv-06418-MAT**
**DECISION AND ORDER**

## I. Introduction

Proceeding *pro se*, Wander De La Rosa ("De La Rosa" or "Petitioner") commenced this habeas proceeding pursuant to 28 U.S.C. § 2241 ("§ 2241") challenging his continued detention in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). For the reasons discussed below, the request for a writ of habeas corpus is denied, and the Petition (Docket No. 1) is dismissed.

## II. Factual Background and Procedural History

De La Rosa, a native and citizen of the Dominican Republic, was admitted to the United States at the New York, New York port of entry on May 25, 2002, as a lawful permanent resident ("LPR").

On June 28, 2006, De La Rosa was convicted by guilty plea in New York State Supreme Court, New York County ("New York County

Supreme Court") of one count of Criminal Sale of a Controlled Substance ("CSCS") in the Third Degree (New York Penal Law ("P.L.") § 220.39(1), for which he was sentenced to three and one-half years' imprisonment and two years post-release supervision ("PRS").

On September 14, 2006, De La Rosa was served with a Notice to Appear ("NTA") charging him with being subject to removal pursuant to Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(a)(iii), as an alien who, at any time after admission, has been convicted of an aggravated felony offense as defined in INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B), namely, an offense relating to the illicit trafficking in a controlled substance; and pursuant to INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), as an alien who has been convicted of a controlled substance offense.

However, on January 4, 2007, an immigration judge ("IJ") terminated De La Rosa's removal proceedings in light of his appeal of his 2006 criminal conviction. On December 2, 2008, the Appellate Division, First Department, of New York State Supreme Court unanimously affirmed De La Rosa's conviction without opinion. *People v. De La Rosa*, 57 A.D.3d 220, 869 N.Y.S.2d 844 (1st Dep't 2008). Leave to appeal was denied by the New York Court of Appeals on August 12, 2009.

For reasons which are not explained by the Government, De La Rosa's guilty plea to third-degree CSCS was subsequently vacated. On September 13, 2010, De La Rosa entered a guilty plea in

New York County Supreme Court to one count of Criminal Possession of a Controlled Substance ("CPCS") in the Third Degree (P.L. § 220.16(1)) for which he was sentenced to a term of 42 months' imprisonment and two years' PRS.

On February 14, 2018, De La Rosa was convicted in New York County Supreme Court of third degree CPCS and received a sentence of two years' imprisonment and 18 months' PRS.

Upon being released from the custody of the New York State Department of Corrections and Community Supervision on November 15, 2018, De La Rosa was taken into DHS custody and placed in removal proceedings via a NTA. The NTA charged him with being subject to removal pursuant to INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), as an alien who has been convicted of a controlled substance offense, based on his February 2018 conviction for third-degree CPCS.

On November 13, 2018, and November 19, 2018, DHS determined to continue De La Rosa's detention pending a final administrative decision in his removal proceeding. De La Rosa requested that an IJ review DHS's custody determination.

On November 30, 2018, DHS filed Additional Charges of Inadmissibility/Deportability against De La Rosa, charging him with being subject to removal pursuant to INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), as an alien who has been convicted of a controlled substance offense based on his September 2010 conviction for third-degree CPCS.

De La Rosa's removal proceedings were continued at his attorney's request on several occasions. On December 12, 2018, counsel obtained an adjournment until January 7, 2019. On January 7, 2019, the proceedings were further adjourned until January 28, 2019, to allow additional time for counsel to prepare. At the *Joseph* hearing[1] on January 28, 2019, an IJ determined that De La Rosa was subject to mandatory detention under INA § 236(c), 8 U.S.C. § 1226(c) and statutorily ineligible for bond. De La Rosa waived his right to appeal the IJ's decision. Also at the January 28th hearing, De La Rosa conceded that he is removable and was given an opportunity to file applications for relief from removal. The proceedings were continued until March 19, 2019, for that purpose. On February 12, 2019, De La Rosa's counsel filed a motion to adjourn the March 19, 2019 hearing, which was granted. The matter was rescheduled for April 9, 2019.

On April 9, 2019, and May 3, 2019, an IJ conducted hearings regarding De La Rosa's application for withholding and deferral of

---

[1] While the applicable statute and regulations prohibit an IJ from releasing an individual detained pursuant to Section 1226(c), *see* 8 C.F.R. § 1003.19(h)(2)(i)(D), a person detained under § 1226(c) may request a hearing before an IJ to assess whether he or she is actually subject to mandatory detention under the statute. 8 C.F.R. § 1003.19(a), (b), and (h)(2)(ii); *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999)). A *Joseph* hearing charges ICE with the initial burden of showing there is "reason to believe" that the alien is deportable or inadmissible under a ground listed in Section 1226(c)(1)(A)-(D). *Matter of Joseph*, 22 I. & N. Dec. at 803-04; citing *Matter of U-H-*, 23 I. & N. Dec. 355, 356 (BIA 2002) ("reason to believe" standard is equivalent to "probable cause" standard)). Once the Government has carried that burden, an individual detained under § 1226(c) may secure a bond hearing only if he or she is able to affirmatively demonstrate that the Government's charges are meritless, and therefore, he or she is not "properly included" under § 1226(c). *Matter of Joseph*, 22 I. & N. Dec. at 806-07.

removal under Article III of the Convention Against Torture ("CAT"). At the hearings, De La Rosa testified regarding his fear of persecution in the Dominican Republic and called an expert witness, a former agent with the Drug Enforcement Administration. On June 21, 2019, the IJ issued an unfavorable decision on the application for relief under the CAT and ordered De La Rosa removed from the United States to the Dominican Republic. De La Rosa appealed the IJ's decision to the Board of Immigration Appeals ("BIA") on July 10, 2019.

De La Rosa commenced the instant proceeding on, asserting that his detention without a bond hearing violates the Fifth Amendment's Due Process Clause and the Eighth Amendment's Excessive Bail Clause. The Government, on August 16, 2019, filed an answer and return (Docket No. 3) along with supporting declarations and exhibits (Docket Nos. 3-1 to 3-5) and a memorandum of law (Docket No. 4). At the time of the Government's response to the petition, De La Rosa's appeal to the BIA remained pending. On August 27, 2019, De La Rosa filed two replies (Docket Nos. 6 & 7), one of which (Docket No. 7) appended letters of support from friends and relatives and records from his state court criminal proceedings. The matter was transferred to the undersigned on October 2, 2019.

**III. Scope of Review**

Title 28 U.S.C. § 2241 grants this Court jurisdiction to hear habeas corpus petitions from aliens claiming they are held "in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3)). However, the REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a), 199 Stat. 231 (May 11, 2005) amended the INA to provide that petitions for review filed in the appropriate Courts of Appeals were to be the "sole and exclusive means for judicial review" of final orders of removal. *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 113 (2d Cir. 2008) (citing REAL ID Act § 106(c); 8 U.S.C. § 1252(a)(5)). In other words, the REAL ID Act "strips district courts of jurisdiction to hear habeas petitions challenging final orders of deportation. . . ." *De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 615-16 (2d Cir. 2007). District courts still are empowered to grant relief under § 2241 to claims by aliens under a final order of removal who allege that their post-removal-period detention and supervision are unconstitutional. *See Zadvydas*, 533 U.S. at 687-88; *see also Hernandez v. Gonzales*, 424 F.3d 42, 42–43 (1st Cir. 2005) ("The Real ID Act deprives the district courts of habeas jurisdiction to review orders of removal, . . . [but] those provisions were not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'") (quoting H.R. Cong. Rep. No. 109-72, at *43 2873 (May 3, 2005)).

Although this Court has jurisdiction to decide statutory and constitutional challenges to civil immigration detention, it does not have jurisdiction to review the discretionary decisions of the Attorney General. *Zadvydas*, 533 U.S. at 688 (citing 8 U.S.C.

-6-

§ 1252(a)(2)(B)(ii)) ("[N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the authority of which is specified under this subchapter to be in the discretion of the Attorney General."). "[W]hether the district court has jurisdiction will turn on the substance of the relief that a [petitioner] is seeking." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (*per curiam*).

**IV. Discussion**

    **A. Claim One: Fifth Amendment Due Process**

De La Rosa asserts that his ongoing prolonged detention without an individualized hearing before a neutral decisionmaker violates his procedural due process rights under the Fifth Amendment.

"[I]n a series of decisions since 2001, the Supreme Court . . . ha[s] grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." *Rodriguez v. Robbins*, 804 F.3d 1060, 1067 (9th Cir. 2015), *rev'd on other grounds sub nom Jennings v. Rodriguez*, --- U.S. ----, 138 S. Ct. 830, 200 L.Ed.2d 122 (2018). Of particular relevance here is *Demore v. Kim*, 538 U.S. 510 (2003), wherein the Supreme Court considered a due process challenge to § 1226(c), the statute pursuant to which De La Rosa is presently detained. Section 1226(c), which mandates detention during removal

proceedings for noncitizens convicted of certain crimes, was Congress's response to the high rates of crime and flight by certain removable noncitizens, including those convicted of an aggravated felony. *Demore*, 538 U.S. at 517-18. The Supreme Court found that § 1226(c) as applied to the detainee in that case was not unconstitutional because "the Government may constitutionally detain deportable [noncitizens] during the limited period necessary for their removal proceedings." *Id.* at 518-21, 526. In so holding, the Supreme Court stressed the "brief" nature of the mandatory detention under § 1226(c), which has "a definite termination point" that, in the vast majority of cases, resulted in a period of detention lasting less than five months. *Id.* at 529-30. The concurring opinion by Justice Kennedy, which created the majority in *Demore*, reasoned that under the Due Process Clause, a noncitizen could be entitled to "an individualized determination as to his risk of flight and dangerousness if the continued detention became *unreasonable or unjustified*." *Id.* at 532 (concurring opn., Kennedy, J.) (emphasis supplied).

In 2015, the Second Circuit held that, as a matter of statutory interpretation, § 1226(c) entitled detainees to a bond hearing before a neutral arbiter once their detention reached six months. *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), *cert. granted, judgment vacated*, 138 S. Ct. 1260 (2018), *on remand to* 719 F. App'x 79 (2d Cir. 2018) (appeal dismissed as moot). However, *Lora*—along with similar decisions from a number of other

-8-

circuits—were vacated by *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), which held that § 1226(c) contains no temporal limitation on detention. *See id.* at 846 ("[Section] 1226(c) does not on its face limit the length of the detention it authorizes. In fact, by allowing aliens to be released 'only if' the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute. And together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.' § 1226(a).") (emphasis in original). The Supreme Court ruled only on the alien's statutory interpretation claims and expressly declined to consider their Due Process arguments, on which the lower courts had not yet spoken. *Id.* at 851.

In the wake of *Jennings*, district courts all over the country have struggled with how to address Due Process challenges to mandatory detention under § 1226(c). The Court agrees with the district courts in this Circuit "'that have found that, at some point, detention without a hearing offends the Due Process Clause[.]'" *Lett v. Decker*, 346 F. Supp.3d 379, 387 (S.D.N.Y. 2018) (quoting *Young v. Aviles*, 99 F. Supp.3d 443, 455 (S.D.N.Y. 2015)), "and that '"determining whether mandatory detention has become unreasonable "is a fact-dependent inquiry requiring an assessment

-9-

of all the circumstances of a given case,"'" *id.* (quoting *Perez v. Decker*, No. 18-CV-5279(VEC), 2018 WL 3991497, at *4 (S.D.N.Y. Aug. 20, 2018) (quoting *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018)); *see also*, *e.g.*, *Sankara v. Barr*, No. 19-CV-174, 2019 WL 1922069, at *6 (W.D.N.Y. Apr. 30, 2019). The majority of these district courts have engaged in a case-specific analysis that involves consideration of several factors derived from, *e.g.*, the Supreme Court's decision in *Demore*, and pre-*Jennings* decisions from the First, Third, Sixth, and Eleventh Circuits regarding the reasonableness of prolonged detention under § 1226(c). *See, e.g., Sajous*, 2018 WL 2357266, at *10-*11 (factors to be considered are (1) the length of time the alien has already been detained, the "first, and most important" factor; (2) the extent to which the alien is responsible for the delay; (3) the extent to which the Government is responsible for the delay; and (4) whether the alien has asserted any defenses to removal, i.e., the likelihood that the removal proceedings will result in a final order of removal; other factors that "may be relevant" are the length of an alien's criminal sentence versus the length of the civil detention and whether the facility is meaningfully different than a penal institution) (citations omitted).

Here, after considering the above-referenced factors, the Court concludes that De La Rosa's detention without a bond hearing has not become unreasonably prolonged so as to violate Due Process.

De La Rosa has been in DHS custody since November 15, 2018, just shy of one year. The length of his proceedings to date is not insignificant and, accordingly, it tends to weigh in his favor. On the other hand, 12 months does not exceed the time De La Rosa spent in prison for the crimes that have rendered him deportable. As discussed above, De La Rosa's drug-related convictions in 2006, 2010, and 2018 subjected him to terms of imprisonment of three and one-half years, 42 months, and two years, respectively. While it does not appear that he served the full length of those sentences, the aggregate time he spent incarcerated is greater than the time he has been civilly detained. This factor weighs against finding a due process violation.

Also, "the sheer length of the proceedings is not alone determinative of reasonableness." *Debel v. Dubois*, No. 13-CV-6028 (LTS)(JLC), 2014 WL 1689042, at *5 (S.D.N.Y. Apr. 24, 2014). Courts in this Circuit routinely have found periods of detention comparable to or greater than De La Rosa's to be constitutional. *See, e.g.*, *Richardson v. Shanahan*, No. 15 CIV. 4405 AJP, 2015 WL 5813330, at *6 (S.D.N.Y. Oct. 6, 2015) (citing *Hylton v. Shanahan*, 15 Civ. 1243, 2015 WL 36044328, at *1, *5-6 (S.D.N.Y. June 9, 2015) (23-month detention constitutional); *Baker v. Johnson*, 2015 WL 2359251, at *13 (11-month detention at time of filing and likely 15 to 17-month total detention constitutional); *Vaskovska v. Holder*, No. 14-CV-270, 2014 WL 4659316, at *1-*4 (W.D.N.Y. Sept. 17, 2014) (15 month detention by date opinion issued constitutional); *Debel*,

2014 WL 1689042, at *6 (18-month detention constitutional even though total detention time ultimately was "likely" to exceed 2 years); *Johnson*, 942 F. Supp.2d, at 408–10 (15-month detention constitutional); *Johnson v. Phillips*, No. 10–CV–480, 2010 WL 6512350 at *6–*7 (W.D.N.Y. Dec. 20, 2010) (17-month detention), *report & rec. adopted*, 2011 WL 1465448 (W.D.N.Y. Apr. 18, 2011); *Luna-Aponte v. Holder*, 743 F. Supp.2d 189, 197 (W.D.N.Y. 2010) (detention for over 3 years constitutional); *Adreenko v. Holder*, 09 Civ. 8535, 2010 WL 2900363, at *3–*4 (S.D.N.Y. June 25, 2010) (13-month detention constitutional); *Adler v. U.S. Dep't of Homeland Sec.*, 09 Civ. 4093, 2009 WL 3029328, at *2 (S.D.N.Y. Sept. 22, 2009) (15-month detention constitutional)).

With regard to the factor that considers which party is responsible for the delay, it appears that any delays have been attributable to De La Rosa's requests for adjournments. As noted above, De La Rosa was taken into DHS custody on November 15, 2018; DHS filed additional charges of deportability on November 30, 2018; and his first hearing before an IJ was scheduled for December 21, 2018. However, on December 12, 2018, De La Rosa's counsel obtained an adjournment of the hearing until January 28, 2019. Thereafter, counsel sought additional adjournments until April 9, 2019, for various reasons, including a scheduling conflict, the need to investigate De La Rosa's case, and the necessity of preparing applications for relief from removal after De La Rosa conceded his removability at the January 28, 2019 *Joseph* hearing. There is no

suggestion that any of these adjournments were motivated by dilatory tactics on the part of De La Rosa's counsel; at the same time, there is no evidence that the proceedings have been prolonged by dilatory tactics on the part of the Government. *See Debel v. Dubois*, 2014 WL 1689042, at *5 ("[T]he principal factor considered in constitutional review of detention pending removal proceedings is the degree to which the proceedings have been prolonged by unreasonable government action.") (*comparing Adler v. U.S. Dep't of Homeland Sec.*, No. 09 Civ. 4093(SAS), 2009 WL 3029328, at *2 (S.D.N.Y. Sept. 22, 2009) (15-month detention reasonable because there was "no evidence . . . that the government ha[d] dragged its feet"), *with Ly v. Hansen*, 351 F.3d 263, 272–73 (6th Cir. 2003) (detention unreasonable because INS "drag[ged] its heels indefinitely in making a decision")). Under these circumstances, it appears that De La Rosa's detention, at this point, is still serving the legitimate purpose of facilitating his appearance for his removal proceedings. *Cf. Demore*, 538 U.S. at 532–33 (Kennedy, J., concurring) ("Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention [under § 1226(c)] is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons. . . ."); *see also Dryden v. Green*, 321 F. Supp. 3d 496, 503 (D.N.J. 2018) (given petitioner's decisions to seek multiple continuances in that matter, the relatively swift course of his removal

proceedings following his filing of requests for relief from removal, the lack of bad faith or dilatoriness by the Government, district court could not conclude that detention for just over a year under § 1226(c) had become so prolonged as to arbitrary or unconstitutionally unreasonable; it fully appeared that detention still served the purposes of § 1226(c)—specifically ensuring that petitioner appears for his immigration proceedings). Therefore, De La Rosa has failed to demonstrate that § 1226(c) is unconstitutional as applied to him, and his habeas petition must be denied without prejudice at this time. *E.g.*, *Dryden*, 321 F. Supp.3d at 503.

**B.   Claim Two: Eighth Amendment's Excessive Bail Clause**

In his second claim for relief, De La Rosaa asserts that his prolonged detention violates the Eighth Amendment which prohibits "excessive bail." Pet. ¶ 41 (quoting U.S. CONST., amend. VIII). The Eighth Amendment states, "Excessive bail shall not be required . . . ." U.S. CONST., amend. VIII. The Excessive Bail Clause does not "accord a right to bail in all cases, but merely [provides] that bail shall not be excessive in those cases where it is proper to grant bail." *Carlson v. Landon*, 342 U.S. 524, 545 (1952); *see also Leader v. Blackman*, 744 F. Supp. 500, 509 (S.D.N.Y. 1990) ("It is well settled that bail may be denied under many circumstances, including deportation cases, without violating any constitutional rights."). Petitioner fails to point to any authority establishing that it is proper to grant him bail under the Eighth Amendment.

-14-

Therefore, the Court denies this claim. *Banda v. McAleenan*, 385 F. Supp.3d 1099, 1121 (W.D. Wash. 2019).

## V. **Conclusion**

For the foregoing reasons, the request for a writ of habeas corpus is denied, and the Petition (Docket No. 1) is dismissed without prejudice. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:   November 7, 2019
         Rochester, New York.